IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE H. FLYNN, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 318 |
| v. ) | |
| ) | Wayne R. Andersen |
| PHILIP MORRIS USA, INC., MADDEN ) | District Judge |
| SERVICES, INC., HUB GROUP ) | |
| DISTRIBUTION SERVICES, LLC, ) | |
| JOSEPH D. GAFFNEY, JR., ) | |
| JOSEPH W. GAFFNEY, SR., ) | |
| and WARD CASHION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendants' various motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiff Lawrence H. Flynn, Inc. ("Flynn, Inc.") filed a ten-count complaint alleging unfair competition under the Lanham Act (Count I), violations of the Florida Antitrust Act (Counts II and III), defamation (Counts IV and V), tortious interference (Counts VI and VII), breach of contract (Count VIII), promissory estoppel (Count IX), and civil conspiracy (Count X).

Defendants Joseph W. Gaffney, Sr. ("Gaffney Sr.") and Ward Cashion ("Cashion") together with defendant Phillip Morris USA, Inc. ("Philip Morris") have filed a motion to dismiss Gaffney Sr. and Cashion pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Alternatively, Philip Morris together with Gaffney Sr. and Cashion has moved to dismiss Counts I, II, III, VII and X pursuant to Rule 12(b)(6) for failure to state a claim. Defendant Madden Services, Inc. ("Madden") also has filed a motion to dismiss Counts II, III, VII and X of the complaint pursuant to Rule 12(b)(6), and defendant Hub Group

Distribution Services, LLC ("Hub") has filed a Rule 12(b)(6) motion to dismiss attacking Counts II, III, VIII, IX and X of the complaint. For the following reasons, all of the motions to dismiss are granted.

## BACKGROUND

Flynn, Inc. is engaged in the business of installing point-of-sale merchandise displays and fixtures in retail outlets in Florida. (Compl. at ¶ 5). Hub is engaged in contracting point-of-sale installation services nationally for a variety of clients. (Compl. at ¶ 8). This dispute centers around a contractual agreement entered into between Flynn, Inc. and Hub (the "Hub-Flynn Agreement"), which, pursuant to its terms, includes Flynn, Inc. as a member of Hub's network of eligible subcontractors who are given work on a non-exclusive basis to render installation services for Hub's clients. (Compl. at ¶ 12; Exhibit A).

One of Hub's clients is Madden, and Madden has a contractual agreement with Philip Morris whereby Madden arranges for the nationwide installation of Philip Morris cigarette displays and fixtures through its subcontractors. (Compl. at ¶ 7). According to the allegations in the complaint, Madden subcontracted with Hub, among others, to arrange for point-of-sale installations for Phillip Morris's cigarette displays and fixtures. (Compl. at ¶ 17). Hub, then, subcontracted a portion of its Philip Morris installation work in Florida to Flynn Inc. (Compl. at ¶ 18).

Defendant Joseph D. Gaffney, Jr. ("Gaffney Jr.") was employed by Flynn Inc. as an independent contractor for approximately ten months and performed point-of-sale installation work, including installations for Philip Morris, before he was discharged. (Compl. at ¶¶ 9, 21-25). Gaffney Sr., who is the father of Gaffney Jr., is a territory sales manager for Phillip Morris with the authority to supervise Philip Morris installation work in various Florida counties.

(Compl. at ¶ 10). Gaffney Sr. reports to Cashion who is the director of the territory sales managers and oversees the business activities of Philip Morris' sales managers in Florida. (Compl. at ¶ 11).

On September 18, 2003, Madden contacted Flynn Inc. about an inventory inquiry brought to its attention by Gaffney Sr. (Compl. at ¶ 34). Specifically, Gaffney Sr. had contacted Madden requesting installation work for a Phillip Morris job. (Compl. at ¶ 34). When Madden declined to provide the work requested, Gaffney Sr. informed Madden that Gaffney Jr. had cigarette fixtures in his residence and that those fixtures would be used to perform the installation. (Compl. at ¶ 34). Thereafter, Madden contacted Flynn Inc. to determine why fixtures were in the unauthorized possession of Gaffney Jr. (Compl. at ¶ 34).

Shortly after the September 18, 2003 inquiry, Gaffney Jr. approached Flynn Inc. seeking re-employment as an independent contractor, but Flynn Inc. refused to re-hire Gaffney Jr. (Compl. at ¶ 35). On or about October 22, 2003, Gaffney Jr. transmitted a letter to Madden, Hub and Philip Morris, which included damaging statements and accusations against Flynn Inc. (Compl. at ¶ 38). According to the complaint, the statements contained in the letter were found to be false but nevertheless destroyed the business relationships Flynn Inc. had with Madden, Hub and Philip Morris. (Compl. at ¶ 39).

On July 20, 2004, Flynn Inc. filed a ten-count complaint in the United States District Court for the Southern District of Florida. In its complaint, Flynn Inc. alleges that defendants engaged in a series of conspiratorial acts aimed at destroying its business and depriving it of the Philip Morris business opportunities that composed the bulk of its work. All defendants, except Gaffney Jr. who has answered the complaint, filed motions to dismiss or in the alternative to transfer venue. On September 14, 2004, the district court for the Southern District of Florida

3

granted the motion for transfer and denied the remaining motions as moot. Defendants have re-filed their substantive motions to dismiss in this Court.

## DISCUSSION

In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *See Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

As a threshold matter, Flynn Inc. argues that these motions to dismiss already have been resolved by Judge Middlebrooks in the Southern District of Florida. We disagree. Defendants filed various motions to dismiss before Judge Middlebrooks, including a motion to dismiss the action for improper venue or, in the alternative, to transfer to this Court. Judge Middlebrooks granted the motion to transfer and denied the remaining motions as moot. Judge Middlebrooks did not address the merits of defendants' remaining motions pursuant to Federal Rule 12(b)(6). Defendants have re-filed those motions to dismiss pursuant to Rule 12(b)(6) and an additional motion to dismiss pursuant to Rule 12(b)(2), which are properly before this Court.

### I. Gaffney Sr. and Cashion's Motion to Dismiss for Lack of Personal Jurisdiction

Gaffney Sr. and Cashion have filed a joint motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Personal jurisdiction is determined pursuant to the law of the state in which the district court is located in accord with Federal Rule of Civil Procedure 4(e)(1),

which means this Court has personal jurisdiction only if an Illinois state court would have jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Illinois law authorizes personal jurisdiction to the maximum extent of the Constitution. *Id.* at 1276. Pursuant to the due process clause of the Fourteenth Amendment, out-of-state defendants who have no minimum contacts with Illinois cannot be subject to the jurisdiction of this Court. *Id.* There must be such minimum contacts such that requiring a defendant to defend an action in Illinois would not offend traditional notions of fair play and substantial justice. *Id.* at 1277.

Flynn Inc.'s complaint fails to establish sufficient minimum contacts that would subject either Gaffney Sr. or Cashion to the jurisdiction of this Court. Both are residents of the state of Florida, and the complaint does not contain any allegations that either Gaffney Sr. or Cashion has any contacts with Illinois. The complaint also fails to set forth any facts that would subject these defendants to Illinois' long-arm jurisdiction. Neither Gaffney Sr. or Cashion have committed a tortious act in Illinois, nor is there any evidence that they have done business in Illinois or availed themselves in any way of the benefits of Illinois law. Thus, these defendants are not subject to the jurisdiction of this Court as there is no purposeful availment nor could they have reasonably anticipated that they would be hailed into an Illinois court. The motion to dismiss for lack of personal jurisdiction is granted, and all claims against Gaffney Sr. (Counts I, II, III, VII and X) and Cashion (Counts II, III, VII and X) are dismissed with prejudice.

## II.  Hub, Madden and Philip Morris' Motions to Dismiss the Antitrust Claims

Hub, Madden and Philip Morris have filed separate motions to dismiss Counts II and III. In Count II, Flynn Inc. alleges that defendants have violated the Florida Antitrust Act by engaging in a horizontal boycott which is a per se violation of the Florida Antitrust Act, Fla. Stat. §542.18. Alternatively, in Count III, Flynn Inc. relies on an antitrust theory based on the

5

rule of reason under which it is a violation of the Florida Antitrust Act if a plaintiff can demonstrate an unreasonable restraint of trade even though a per se violation cannot be shown. *See* Fla. Stat. §542.18.

In the context of a motion to dismiss, the Seventh Circuit has stated that a court must evaluate whether "the plaintiff has successfully pleaded a . . . conspiracy in restraint of trade within the meaning of the Sherman Act." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). However, a plaintiff "may not evade these requirements by merely alleging a bare legal conclusion; if the facts do not at least outline or adumbrate a violation of the Sherman Act, the plaintiff will get nowhere merely by dressing them up in the language of antitrust." *Id.* (internal quotation marks and citation omitted). The Seventh Circuit further explained that the "invocation of antitrust terms of art does not confer immunity from a motion to dismiss; to the contrary, these conclusory statements must be accompanied by supporting factual allegations." *Id.* at 1110.

In addressing antitrust claims, a court must determine whether there has been harm to competition generally or whether the claim alleged only has harmed a competitor whereby the antitrust claim would be dismissed for failure to state a claim. *See NYNEX Corp. v. Discon, Inc.*, 528 U.S. 128, 135 (1998) (finding that a plaintiff "must allege and prove harm not just to a single competitor but to the competitive process, i.e. to competition itself"). Case law has categorized restraints on competition as being either vertical or horizontal: "Vertical restraints upon competition are those imposed by persons or firms on a different level of the distribution system than the level of the persons or firms receiving the impact of the restraints. . . . On the other hand, horizontal restraint are those imposed within the same distribution level. . . ." *Parts Depot Company, L.P. v. Florida Auto Supply Inc.*, 669 So. 2d 321 (Fla. 4th DCA 1996) (citing

6

*St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*, 457 So.2d 1028, 1031 (Fla. 2d DCA 1984)). The per se rule applicable in the group boycott context is strictly limited to cases involving horizontal agreements against direct competitors. *See NYNEX Corp.*, 528 U.S. at 135 ("[P]recedent limits the per se rule in the boycott context to cases involving horizontal agreements among direct competitors.").

Hub, Madden and Philip Morris have asserted in harmony that Count II fails for the simple reason that defendants are not direct competitors with Flynn Inc., a finding that must be made in order to support a per se claim. In its complaint, Flynn Inc. alleges that defendants Madden, Hub and Gaffney Jr. "are each competitors of Flynn for Philip Morris installation work" (Compl. at ¶ 75) and that their collective efforts to exclude Flynn Inc. as a competitor for the installation work amounts to a horizontal group boycott. (Compl. at ¶ 77). Although Flynn Inc. makes the conclusory assertion that Madden, Hub and Gaffney Jr. are Flynn Inc.'s competitors, other allegations in the complaint contradict that assertion, and a plain reading of the complaint demonstrates that this case deals with a vertical subcontracting relationship rather than a horizontal one as none of defendants here actually are competitors. It is clear that Madden, Hub, Flynn Inc. and Gaffney Jr. each hold separate positions in a vertical chain of distribution for the installation of Philip Morris cigarette fixtures and displays. The only *per se* violation applicable to a vertical relationship is price fixing – a claim not alleged in the complaint. *See Danielson Food Products, Inc. v. Poly-Clip System*, 120 F. Supp. 2d 1142, 1145 (N.D. Ill. 2000) ("Because vertical agreement are illegal per se only if their purpose is price fixing, a non-price vertical agreement is not a per se illegal group boycott.") (internal quotations and citation omitted). Thus, Count II fails to state a claim.

7

The Court now examines Flynn Inc.'s antitrust claim under the rule of reason as set forth in Count III. To state a claim for an antitrust violation under the rule of reason, a plaintiff must show that (1) a defendant has market power in the relevant market; (2) the defendant's conduct is likely to have an adverse effect on competition; and (3) the antitrust violation will cause injury to the plaintiff. *See Menasha Corp. v. News America Marketing In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004); *Spanish Broadcasting Sys., Inc. v. Clear Channel Communications, Inc.*, 242 F. Supp. 2d 1350, 1357 (S.D. Fla. 2003).

In order to satisfy the market power requirement, a plaintiff must establish that an alleged agreement has produced adverse, anti-competitive effects within a specifically defined and relevant geographic market. *See 42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401, 404 (7th Cir. 2002). A relevant market, for antitrust purposes, is determined "by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3rd Cir. 1997) (collecting cases). In other words, the inquiry is whether, from a buyers's point of view, one product would serve as a reasonable substitute for another. *Id.* at 438, n.6 (explaining that "[c]ross-elasticity of demand is a measure of the substitutability of products from the point of view of buyer").

Throughout its complaint, Flynn Inc. defines the relevant market as "Philip Morris installation work in Florida." However, Flynn Inc. fails to consider substitute services or otherwise assess the actual impact on competition. *Id.* at 436. Accepting all of its allegations as true, Flynn Inc. suggests that the installation of Philip Morris displays and fixtures is so specialized that no one else's services would serve as a reasonable substitute. However, as the court explained in *Queen City Pizza Inc.*, when a plaintiff alleges "a proposed relevant market

8

that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Id.*

Flynn Inc. does not claim harm to competition and only complains of the harm it has suffered as a result of Philip Morris refusing to use its services. Defendants alleged conduct does not impact competition. At best, defendants may be refusing to deal with Flynn Inc. and a refusal to deal cannot constitute an antitrust violation. *See Parts Depot Co. L.P.*, 669 So.2d at 326. (finding that "[a] manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently"). Because Flynn has failed to state its antitrust claim under the rule of reason, Count III also must be dismissed.

### III. Madden's Motion to Dismiss Tortious Interference Claims

As stated above, Flynn Inc.'s claims for tortious interference against Gaffney Sr. and Cashion are dismissed. However, Flynn Inc.'s claim for tortious interference as set forth in Count VII remains against Madden. It is a well-established rule that a party may not be charged with tortious interference with his own contract. *See Genet v. Annheuser-Busch, Inc.*, 498 So.2d 683, 684 (Fla. 3d DCA 1986); *Jarzynka v. St. Thomas University School of Law*, 310 F. Supp. 2d 1256, 1267 (S.D. Fla. 2004). Only third parties can tortiously interfere with a business relationship. *See Jrzynka*, 310 F. Supp. 2d at 1267; *Salit v. Ruden, McClosky*, 742 So.2d 381, 386 (Fla. 4th DCA 1999).

In its complaint, Flynn Inc. alleges that Madden's contract with Hub is "expressly incorporated by reference into Flynn's contract with Defendant Hub Group, and is expressly made an integral part of Flynn's contract with Hub Group." (Compl. at ¶ 19). Thus, according to Flynn Inc.'s own allegation, Madden, at a minimum, has an integral role in the very contract

9

about which Flynn Inc. complains that Madden interfered with. By Flynn Inc.'s own allegation, Madden is not a stranger to the contract between Flynn Inc. and Hub.

Madden further asserts that there cannot be a claim for tortious interference when the defendant is the source of business opportunity. *See Genet*, 498 So.2d at 684. In *Genet*, the court held that a defendant cannot be liable for tortious interference as a matter of law when it is "the source of the business opportunity which plaintiffs sought." *Id*. Here, Madden was the source of the business opportunity provided to Flynn Inc. Specifically, Madden hired Hub, and Hub in turn sub-contracted the installation work to Flynn, Inc. As a source of the business opportunity from which this action arose, Flynn Inc.'s claim against Madden for tortious interference fails. Thus, Count VII will be dismissed.

## IV. Hub's Motion to Dismiss the Breach of Contract Claims

### A. Failure to Defend, Indemnify and Hold Harmless

In Count VIII, Flynn alleges a breach of contract claim against Hub and asserts that Hub failed to hold Flynn Inc. harmless from and against the defamatory statements made by Gaffney Jr. and that because of this Flynn Inc. lost all of its Philip Morris installation business. Flynn Inc. further claims that Hub had a contractual duty of indemnification for all of its losses resulting from Gaffney Jr.'s actions.

Contracts of indemnity are to be strictly construed, and courts will not read into the contract an indemnity term where it is clear from the language of the contract that no such term was intended. *See Talandis Constr. Corp. v. Illinois Bldg. Auth.*, 23 Ill. App. 3d 929, 933-34, 321 N.E.2d 154, 158 (1st Dist. 1974). When interpreting indemnity contracts, the agreement between the parties must be given a fair and reasonable interpretation based upon a consideration of all

the language and provisions in the contract. *Karsner v. Lechters Illinois Inc.*, 771 N.E.2d 606, 607, 331 Ill. App. 3d 474, 477 (Ill. App. Ct. 2003)

The Hub-Flynn Agreement specifically provides:

> [Hub] agrees to defend, indemnify and hold harmless [Flynn Inc.] from and against any and all claims or actions of any person or entity and any and all damage, injury, loss, liability, cost or expense, including attorneys' fees, and other reasonable expenses and costs incurred by [Flynn Inc.] resulting from, arising out of or related to (i) any breach or violation, or alleged breach or violation, by [Hub] of any term, duty, obligation or provision of this Agreement or (ii) any act or omission by [Hub], other than in connection with any act or omission by [Flynn Inc.] or any of [Flynn Inc.'s] personnel. (Compl., Ex. A at ¶ 7(a)).

Hub asserts that the language of its agreement with Flynn Inc. cannot be construed to indemnify Flynn Inc. for the consequences of a dispute that arose because Flynn Inc. discharged one of its own installers. This Court agrees. The Hub-Flynn Agreement specifically provides that Hub will indemnify Flynn Inc. only when Hub's own act or omission subjects Flynn, Inc. to liability. This does not encompass the current situation in which it is Flynn, Inc. that has brought a variety of claims against various defendants, including Hub, arising from the acts of one of its former employees. Gaffney Jr. was an independent contractor of Flynn Inc. and not an employee of Hub. The Hub-Flynn Agreement cannot be construed to indemnify Flynn Inc. for the consequences of a dispute that arose as a result of Flynn Inc. firing one of its own installers. Thus, Count VIII is dismissed.

### B.     Promissory Estoppel

In Count IX, Flynn Inc. raises a promissory estoppel claim against Hub and asserts that Hub should be held responsible for the costs Flynn Inc. incurred in opening a warehouse at Hub's request to accommodate future Philip Morris installation work. Although Flynn Inc. was a non-exclusive subcontractor of Hub, Flynn Inc. claims that it reasonably relied on Hub's

"assurances and representations of steady future Philip Morris installation business in Florida" (Compl. at ¶ 103) by opening a warehouse facility to accommodate an alleged promised stream of business.

As the Illinois Appellate Court explained in a recent ruling, promissory estoppel is available only as a defense and not as an independent cause of action in Illinois. *See DeWitt v. Fleming*, 828 N.E.2d 756, 758, 357 Ill. App. 3d 571 (Ill. App. Ct. 2005). As the Illinois Appellate Court explained, promissory estoppel "is not a proper vehicle for direct relief [and] cannot properly be pled as a cause of action." *Id.* (quoting *ESM Development Corp. v. Dawson*, 795 N.E.2d 397, 342 Ill. App. 3d 688, 695 (2003) (internal quotations omitted)). The Appellate Court further stated that a claim for promissory estoppel "is meant to be utilized as a defensive mechanism – not as a means of attack and does not form the basis for a damages claim." *Id.* Accordingly, Count IX is dismissed.

### V. Hub, Madden and Philip Morris' Motions to Dismiss the Civil Conspiracy Claim

In Count X, Flynn Inc. alleges that defendants Gaffney Sr. and Cashion conspired with Gaffney Jr. to draft and communicate a defamatory letter to Philip Morris and engage in a concerted and illegal action to ruin its installation business. Flynn Inc. further alleges that Hub, Madden and Philip Morris were aware of the unlawful acts taken by the other defendants and joined the alleged conspiracy when they refused to allow Flynn Inc. to continue to perform Philip Morris installation work.

Illinois law, which is similar to Florida law in this regard, does not recognize an independent action for civil conspiracy. *See Alloco V. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360 (S.D. Fla. 2002); *Indeck North American Power Fund, L.P. v. Norweb plc.*, 735 N.E.2d 649, 662, 316 Ill. App. 3d 416, 432 (Ill. App. Ct. 2000). An action for civil conspiracy

12

must be derived from an underlying wrong. *Alloco*, 221 F. Supp. 2d at 1360; *Indeck*, 735 N.E.2d at 662, 316 Ill. App. 3d at 432. When a claim is found not actionable, it cannot serve as the independent action that must be present to support a claim for civil conspiracy. *Id.*

In this case, the underlying acts alleging antitrust violations, tortious interference and breach of contract are dismissed as stated above. Therefore, because these independent claims do not survive defendants' motions to dismiss, there is not any underlying wrong available to support a claim for civil conspiracy. Thus, Count X also is dismissed.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss [83] for lack of personal jurisdiction is granted, and defendants Cashion and Gaffney Sr. are dismissed with prejudice. Philip Morris' motion to dismiss [83] Counts I, II, III, VII and X is granted, and Philip Morris is dismissed with prejudice. Madden's motion to dismiss [82] Counts II, III, VII and X is granted, and Madden is dismissed with prejudice. Hub's motion to dismiss [84] Counts II, III, VII, VIII, IX and X is granted, and Hub is dismissed with prejudice.

It is so ordered.

 _____
 Wayne R. Andersen
 United States District Judge

Dated: January 19, 2006